A. B. LANGFITT et al., Administrators, Appellants, ELSIE BELL LANGFITT, Resistor, Appellee, LOREN M. MARTIN et al., Intervenors, Appellees.

No. 43725.

MAY 4, 1937.

O. M. Slaymaker, R. E. Killmar and D. D. Slaymaker, for appellants.

J. O. Watson, Jr., for appellee, Elsie Bell Langfitt.

Kelleher & Donohoe, for other appellees.

PARSONS, J.—William F. Langfitt, a resident of Warren county, Iowa, died testate prior to the 13th day of January, 1920. His will directed that all his just debts and funeral expenses be first paid. It then bequeathed all his property, both real and personal, wheresoever situated, and of whatever kind or nature, to Nancy J. Langfitt, his wife, "so long as she shall live and remain my widow". He then devised and bequeathed the remainder of his property and estate to his eleven children, share and share alike. The will was duly probated in Warren county, Iowa, and Nancy J. Langfitt, the widow, qualified as the executrix of the estate and acted as such until the time of her death, which occurred on May 10, 1935. There came into the hands of Nancy J. Langfitt, executrix, a promissory note of Ray Sargent and Ethel L. Sargent, dated February 27, 1918, in the sum of $7,000, secured by a first mortgage on real estate in Warren county, which note was inventoried by the executrix and inventory filed May 16, 1920. On May 16, 1933, the executrix also filed her petition in equity in the Warren county district court to foreclose the seven thousand dollar mortgage, and for judgment on the note in said action. Decree of foreclosure was entered in the case, and land was sold under the decree, deed was issued to Nancy J. Langfitt, executrix of the estate of William F. Langfitt, et al., of Warren county, Iowa (not naming the parties described as "et al.").

Nancy J. Langfitt the executrix died intestate on the 10th day of May, 1935, and on May 25, 1935, an application was made in the Warren county district court for the appointment of administrators of the estate of William F. Langfitt with the will annexed, and the court appointed A. B. Langfitt and J. W. Langfitt as such administrators with the will annexed.

On the 31st day of August, 1935, the said administrators with the will annexed filed an application to sell the real estate

in the estate proceedings of William F. Langfitt, setting forth, among other things, the probate of the will and copy thereof; the foreclosure of the Sargent mortgage; the buying in of said property under foreclosure for the estate and taking of deed therefor, and alleging the property now belongs to the estate, and that said note and mortgage being personal property ''it is necessary that these administrators sell said real estate so that they can settle said estate. That, in addition, it is the desire of practically all of the devisees and legatees that this be done.'' The application set forth that all the children named in the will of William F. Langfitt, deceased, were still living, but that W. E. Langfitt had attempted to convey his interest in the estate to Elsie Bell Langfitt; that Loren M. Martin, Charles E. Watts, Albert C. Shimon, G. A. Hunt and L. A. Wood have brought suit in the district court of Pocahontas county against the administrators and heirs to charge the share of W. E. Langfitt and Elsie Bell Langfitt in said real estate with the payment of the debt W. E. Langfitt owes them. The application set forth that the only persons interested in said estate were those whose names were set out in the petition (named), and giving in addition the names of Loren M. Martin, Charles E. Watts, Albert C. Shimon, G. A. Hunt and L. A. Wood, who had brought suit in Pocahontas county; then it prayed for an order permitting and allowing them to sell and convey said real estate for cash, making conveyance thereof, and that said conveyance bind all persons interested in the estate; that it be by administrator's deed; that the court make an order fixing time for hearing on the application, and prescribe the notice to be given to those interested therein, and in the estate, and for such other orders as might be just and proper; and attached copy of the will of William F. Langfitt thereto.

The court fixed time and prescribed notice to be given; notice was published and all persons required to be notified by the order of court appeared and submitted themselves to the jurisdiction of the court. Every devisee joined with the administrators in their application to sell, Elsie Bell Langfitt, assignee of the share of W. E. Langfitt, being the sole objector.

The real estate in the application was 160 acres of land obtained by Nancy J. Langfitt, executrix under the foreclosure of the Sargent note and mortgage.

Loren M. Martin and others filed a petition of intervention

in the matter, claiming they had an interest in the subject matter of the application filed by the administrators of the Langfitt estate; that they were the owners of a judgment rendered in the district court of Pocahontas county, Iowa, against one W. E. Langfitt, a son and heir-at-law of William F. Langfitt, and a beneficiary under the will of William F. Langfitt; that they attached copy of the judgment in the sum of $2,293.62, stating execution had been issued upon the judgment; and that the administrators of the estate of William F. Langfitt, and in the estate of Nancy J. Langfitt, were garnished and cited to appear on the first day of September, 1935; that Elsie Bell Langfitt appeared by her attorneys (who are attorneys in this proceeding) in the Pocahontas county district court on the 4th day of September, 1935. That the intervenors filed in said proceedings a petition under Code section 11815, asserting that the garnishment was effective to compel and require the payment by the said administrators, of the William F. Langfitt estate, of the distributive share otherwise payable to W. E. Langfitt, judgment debtor, into the office of the clerk of the district court of Pocahontas county, Iowa; they alleged that the land involved was in the hands of the administrators, and was a part of the estate of William F. Langfitt, which came into the hands of Nancy J. Langfitt and was held by her until her death as personal property, and that Nancy J. Langfitt had no other right, title or interest in the mortgage she foreclosed except the right to the income and interest therefrom as owner of the life estate in the assets of her husband's estate; and that the intervenors sought by means of ancillary and auxiliary action to enforce the collection of their judgment by said garnishment proceedings, and to remove all obstructions growing out of an attempted assignment; that the conveyance by W. E. Langfitt to Elsie Bell Langfitt was attacked in said petition of intervention; that in said garnishment and auxiliary proceedings in the district court of Pocahontas county, Iowa, an issue was made and joined between the said Elsie Bell Langfitt and the claimants of the interest therein; that the said Elsie Bell Langfitt sought a change of place of trial by a pleading therefor; that the evidence was introduced and heard in the district court of Pocahontas county, and the matter was submitted to that court and there the case was decided. The intervenors alleged further the property was in truth personal property; that the Pocahontas county court

first obtained jurisdiction, and it has never been relinquished or ousted, and that that case was an adjudication of the issues and was *res adjudicata* of the issues sought to be raised in this case, and requested the granting of the application of the administrators for the sale of personal property and the distribution of the proceeds thereof.

Elsie Bell Langfitt filed in this case a resistance to application to sell the real property, denying that the real estate was personal property, and setting forth that it now belongs to all the children taking under the will, except her former husband, naming the heirs as the holders thereof, saying they were all the persons interested in the estate; that the debts were all paid, and that beginning the 26th day of June, 1935, an action was commenced by her for the partition of said real estate; that all the parties interested in the real estate were parties to the suit, and the court had jurisdiction of said cause.

The reply of the administrators to this resistance was a denial of each allegation not admitted; they admitted bringing suit in cause No. 9488 in the district court of Warren county; set forth that Elsie Bell Langfitt had no right, title or interest in the real estate; had no right to bring or maintain such an action; set forth what was done in the action in Pocahontas county, Iowa; and that the court in Pocahontas county had found that strictly speaking, this was an action to determine the right or interest of the parties in real estate, but under the facts disclosed the land described in plaintiff's petition is in fact held by the administrators of the estate of William F. Langfitt, deceased, and is held by them as personal property to be distributed by them under proper orders of the court in the settlement of the estate; that all the pleadings in the Pocahontas county court were made a part of the Reply by reference to the same as though set out at length therein; that the issue was raised in the action in the Pocahontas county district court by Elsie Bell Langfitt and by her there tried out, and that she is bound by the ruling and order of said court, and the same is in full force and effect, and has never been modified, set aside, or appealed from. They set forth the pendency of the action to set aside the conveyance under which Elsie Bell Langfitt claimed her interest, and that her rights are not prejudiced by a sale of said real estate, as she would receive her full share of the proceeds therefrom if it turned out she had any share, but that if the sale be

denied it will tie up the entire 10/11th shares of the other devisees and delay distribution to them of their shares. The administrators attached a request statement signed by all the heirs, other than the former husband of Elsie Bell Langfitt, saying they never intended to change the note and mortgage from personal property, but intended it should be and remain personal property. All the various records in the different suits were introduced in evidence, also the conveyances.

One of the administrators testified that all of the brothers and sisters were devisees and legatees in the will of William F. Langfitt; that Edward Langfitt and Robert Langfitt are the only children other than those whose names appear on the written request; that Edward was at Clinton, and Robert in northeastern Iowa; they had been in communication with him as to how they wanted the matter handled in their father's estate, and left it as the administrators thought best, and that neither he (the administrator testifying) nor any of the ten brothers and sisters, or Elsie Bell Langfitt, ever exercised any control or ownership over this real estate.

The court entered an order denying the application to sell the real estate; due exception was taken to this order, and an appeal was taken within the proper time.

Really, all the controversy in this matter was submitted to the district court of Pocahontas county, Iowa, in the case tried there in which the administrators with the will annexed were parties, as were also Loren M. Martin and others, plaintiffs, v. W. E. Langfitt and Elsie Bell Langfitt et al., defendants, who were also made parties. In the case in Pocahontas county, Elsie Bell Langfitt did tender the same issue sought to be raised by her resistance filed in this case, and in the ruling in Pocahontas county on that matter the court said:

"And the court further finds that strictly speaking this is not an action to determine the right or interest of these parties in real estate, but that under the facts disclosed the land described in plaintiff's petition is in fact held by the administrators of the Estate of William J. Langfitt, deceased, and is held by them as personal property to be distributed by them under proper orders of the Court in settlement of said estate."

Hence, the administrators in the Pocahontas county case were held as garnishees on the theory, of course, that they had

money or property in their hands belonging to William E. Langfitt who had transferred his interest in the estate to Elsie Bell Langfitt, his wife.

The paper under which she makes claim is set out in the abstract. It might be called a "deed", or it might be called an "assignment". It recites:

"That I, W. E. Langfitt, * * * in consideration of the sum of One Dollars ($1.00) and other valuable considerations, in hand paid by Elsie Bell Langfitt, * * * do hereby sell and convey, assign, and set over unto the said Elsie Bell Langfitt, my undivided share in the following described premises, situated in the County of Warren, and State of Iowa (here follows description of land in controversy)."

It also describes the assignment of some property in New Virginia, then follows an assignment to the grantee of all his right, title and interest in and to the estate of Nancy J. Langfitt, deceased, and of William F. Langfitt, deceased. So it was both an assignment and a deed, and that is the basis of the contention of Elsie Bell Langfitt in this case.

This case calls for the consideration of whether or not the administrators with the will annexed, in closing the estate, could treat the real estate as personal property, same having been acquired by the foreclosure of a mortgage held by William F. Langfitt at the time of his death. In other words, when Langfitt died his estate consisted of what he then had, and among the things he then had was the mortgage and notes secured thereby. The executrix foreclosed the mortgage and took deed, and the administrators with the will annexed became clothed with what interest she had.

In passing upon the case before us in the district court, the judge in discussing the matter, cited Rabbett's Estate v. Connolly, 153 Iowa 607, 617, 133 N. W. 1060, 1064, in which the court said:

"As the amount of decedent's indebtedness was not ascertained, and could not be until a hearing on Rabbett's claim, there was no error in denying the application. Moreover, the heirs, in their resistance, made such a showing as to personal assets that *prima facie* at least there was no necessity for a sale of the real estate."

That, perhaps, was true in that case, and correct, but in that case there was an ordinary application to sell real estate, in order to pay debts. In this case the application is not for the payment of debts, but for the division of the estate. If the real estate is to be treated as personal property, then, of course, in order to distribute it among the heirs it was necessary that it be sold. It was indivisible; it was a 160-acre tract, and could not very well de divided into eleven different parts. So we see nothing in this case that prohibits the doing of the thing asked in this case, in the event this property is to be treated as personal property.

The judge also cited in its ruling in this case, In re Estate of Spicer, 203 Iowa 393, 395, 212 N. W. 689, 690, quoting from the opinion as follows:

"An application for the sale will be denied if made before the amount of indebtedness is ascertained and if the necessity of the sale is not made to appear."

That was in an action to sell in order to pay debts. Here there are no debts. There are, perhaps, some other assets in the estate, perhaps four thousand dollars worth of bonds, at least that is mentioned, but the thought of the action here under discussion is that the real estate was to be treated as personal property, having been acquired as it was, and hence the court had power and authority to sell in order to make a proper division among the heirs, and the same rule would not apply as where the application was made to pay debts of the estate.

The rule laid down in 23 Corpus Juris, sec. 342, page 1143, is:

"So also, if foreclosure proceedings are necessary, they should be brought by the personal representative of the mortgagee, who is the proper person to receive the proceeds of foreclosure, and if an executor takes a conveyance of mortgaged land in satisfaction of the mortgage debt, the land is personalty in his hands being a substitute for the mortgage."

In Stevenson v. Polk, 71 Iowa 278, 32 N. W. 340, 347, there had been some real estate sold under contract by E. R. Hutchinson to one Vink, who, failing to comply with the terms of the sale, had an action filed against him in which plaintiff recovered judgment, and the interest of Vink in the real estate was sold

under a special execution. The action was brought by H. P. Hutchinson, the administrator of the estate of E. R. Hutchinson, said administrator being the purchaser of the real estate, which was conveyed by the sheriff to "H. P. Hutchinson, Administrator". The court in passing on this said: "Vink was, in effect, a mortgagor, and the mortgage was foreclosed, and the real estate sold and conveyed as above stated. Such mortgage, and the indebtedness secured thereby, constituted personal assets of the estate, and as such came into the executor's hands. It was his duty to collect the same, and properly account therefor. When the mortgage was foreclosed, and the land conveyed to 'Hutchinson, administrator', it was still his duty to convert the land into money and account therefor. But he was the owner of the legal title to the land, and could sell and convey it without making any application to the court for that purpose, and the person to whom he so conveyed would take title, and was not required to see that the purchase money was properly accounted for."

In re Estate of Bernhard, 134 Iowa 603, 112 N. W. 86, 12 L. R. A. (N. S.) 1029, follows the same ruling laid down in the Stevenson case.

In Wood v. Schwartz, 212 Iowa 462, 236 N. W. 491, Middaugh had purchased from Schwartz real estate on contract. It was held that Middaugh held equitable title in the real estate which would descend to his heirs, but Schwartz, at the time of his death, had only personal property, which would pass to his personal representatives. This was upon the theory of course that as a contract made for the sale of real estate, that is to say, land is sold to a purchaser under the ordinary real estate contract, the purchaser holds the equitable title, and in effect, in equity, the relation existing between the purchaser and seller is that of mortgagor and mortgagee, and these contracts must be foreclosed as provided by law, and the rights under the contract are personal property.

In Knapp v. Baldwin, 213 Iowa 24, 238 N. W. 542, the same rule is laid down. Knapp was the vendor, Baldwin the vendee. It was said Baldwin held the equitable title to the real estate and Knapp held the legal title as security for the purchase price. Baldwin held equitable title in the real estate, which, upon his death, would descend to his heirs, but Knapp's would pass to her personal representatives and not to her heirs.

Very frequently real estate is treated as personal property, especially in partnerships. The authorities in this country, as well as England, agree that real estate, upon being acquired by a copartnership, is to be treated as having been converted into personalty, to the extent that it may be required to meet partnership obligations and to pay any balance owed to one partner by the other in the settlement of its affairs but as to what remains thereafter, opinions differ radically. Smith v. Smith, 179 Iowa 1365, 160 N. W. 756. This was an action for an accounting of partnership. Paige v. Paige, 71 Iowa 318, 32 N. W. 360, 60 Am. Rep. 799; Sieg v. Greene (C. C. A. 8, 1915), 227 Fed. 41; Lutz v. Billick, 172 Iowa 543, 154 N. W. 884; Van Aken v. Clark, 82 Iowa 256, 48 N. W. 73; Clay v. Freeman, 118 U. S. 97, 6 S. Ct. 964, 30 L. Ed. 104; Woodward-Holmes Co. v. Nudd, 58 Minn. 236, 59 N. W. 1010, 27 L. R. A. 340, 343, 49 Am. St. Rep. 503. Also Giddens v. Reddoch, 207 Ala. 297, 92 So. 848, 25 A. L. R. 389.

So it is not an unusual thing in proper cases, that real estate is treated as personal property.

The proceeding in this case was to divide between the parties the proceeds of the estate. The real estate was not worth much. Elsie Bell Langfitt had had her day in court in Pocahontas county. The judgment went against her there. The same rule was held there as we have set forth in this case. She then comes to Warren county and begins an action for partition. The only thing that could come in the partition suit would be that the costs of partition would be taken out of the proceeds, if it were found that the real estate should be sold, and the balance would be divided among the heirs.

We think the court was wrong in this case in not holding that the administrators had the right to sell the property and divide the proceeds among the heirs. Elsie Bell Langfitt's rights had been taken from her by the adjudication in the Pocahontas case, and she could not make objection here. For the reasons stated, the opinion of the district court appealed from should be reversed and judgment entered for the plaintiffs, directing them to sell the real estate involved, and divide the proceeds among the heirs in accordance with their proportionate interests. In other words, it looks to us as though Elsie Bell Langfitt is in here simply for the purpose of delaying matters. She can have no hopes of getting anything out of it. She can make it expensive

712

to the other owners of the real estate; they are all willing it should be divided. The land would sell better under a court order in the estate matter. Her interests are gone under the judgment in Pocahontas county.

There are other questions raised in this case, which we do not regard as controlling. It is unnecessary to rule on the motion made by the appellees to dismiss the appeal, by reason of the opinion arrived at here. Therefore, for these reasons, the case is reversed and remanded to the district court for entry of judgment directing the sale by the administrators, and a division of the proceeds.—Reversed and remanded.

RICHARDS, C. J., and DONEGAN, KINTZINGER, SAGER, ANDERSON, and STIGER, JJ., concur.